No. 19-15506

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

ORACLE AMERICA, INC., and
ORACLE INTERNATIONAL CORPORATION,
*Plaintiffs-Appellants*,

*v.*

HEWLETT PACKARD ENTERPRISE COMPANY,
*Defendant-Appellee.*

_____

On Appeal from the United States District Court
For the Northern District of California (Hon. Jon S. Tigar) No. 3:16-cv-01393

_____

**RESPONSIVE BRIEF FOR APPELLEE
HEWLETT PACKARD ENTERPRISE COMPANY
UNDER SEAL**

_____

VAISHALI UDUPA
HEWLETT PACKARD ENTERPRISE COMPANY
12010 Sunset Hills Road, 3rd Floor
Reston, VA  20190

DEANNA L. KWONG
HEWLETT PACKARD ENTERPRISE COMPANY
6280 America Center Drive
San Jose, CA  95002

JEFFREY T. THOMAS
BLAINE H. EVANSON
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612

MARK A. PERRY
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, DC  20036
TEL:  (202) 955-8500
mperry@gibsondunn.com

SAMUEL G. LIVERSIDGE
JOSEPH A. GORMAN
ILISSA S. SAMPLIN
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071

*Attorneys for Appellee Hewlett Packard Enterprise Company*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that appellee Hewlett Packard Enterprise Company ("HPE") is a publicly traded corporation. HPE has no parent company, and no public company owns 10% or more of its stock.

Dated: September 27, 2019

s/ *Mark A. Perry*
Mark A. Perry

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| JURISDICTIONAL STATEMENT | | 3 |
| ISSUES PRESENTED | | 3 |
| STATEMENT OF THE CASE | | 4 |
| SUMMARY OF ARGUMENT | | 18 |
| STANDARD OF REVIEW | | 20 |
| ARGUMENT | | 21 |

I. The District Court Correctly Granted Summary Judgment to HPE on Oracle's Copyright Infringement Claims ............ 21

    A. Oracle Failed to Raise a Triable Issue Regarding Installations ............ 24

        1. Direct Support Customers ............ 25

        2. Symantec ............ 32

        3. Joint HPE/Terix Customers ............ 34

    B. Oracle Failed to Raise a Triable Issue Regarding Downloads and Deliveries ............ 35

        1. Terix's Intent Is Immaterial to Liability ............ 36

        2. The District Court Properly Held Oracle to Its Burden of Proving That the Downloads and Deliveries Were Infringing ............ 37

II. The District Court Correctly Granted Summary Judgment on Oracle's State-Law Claims ............ 41

    A. The District Court Correctly Granted Summary Judgment on Oracle's Intentional Interference with Contract Claims ............ 41

        1. Oracle Failed to Present Evidence of a Breach of Contract ............ 42

        2. Oracle Failed to Present Evidence of Resulting Damage ............ 44

B. The District Court Correctly Granted Summary Judgment on Oracle's Intentional Interference with Prospective Economic Advantage Claims.................................................46

    1. Oracle Failed to Present Evidence of Wrongful Conduct.................................................................47

    2. Oracle Failed to Present Evidence of Causation ............49

C. Oracle's Unfair Competition Claim Fails as a Matter of Law.................................................................................50

III. Many of Oracle's Claims Are Barred by the Statute of Limitations........................................................................51

A. Oracle's Copyright Claims Are Partially Time-Barred............51

    1. The Undisputed Evidence Establishes Oracle's Knowledge.................................................................52

    2. Oracle Did Not Conduct a Reasonable Investigation.....56

B. Oracle's State-Law Claims Are Partially Time-Barred............59

CONCLUSION .................................................................................62

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baisden v. I'm Ready Prods., Inc.*,
693 F.3d 491 (5th Cir. 2012) ..................................................................38

*Bernson v. Browning-Ferris Indus.*,
7 Cal. 4th 926 (1994) ..............................................................................60

*BMG Rights Mgmt. (U.S.) LLC v. Cox Commc'ns, Inc.*,
881 F.3d 293 (4th Cir. 2018) ..................................................................35

*Bourne v. Walt Disney Co.*,
68 F.3d 621 (2d Cir. 1995) ......................................................................38

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
371 F.3d 883 (6th Cir. 2004) ............................................................51, 55

*Buck v. Jewell-La Salle Realty Co.*,
283 U.S. 191 (1931) ................................................................................37

*BWP Media USA, Inc. v. T & S Software Assocs., Inc.*,
852 F.3d 436 (5th Cir. 2017) ..................................................................31

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ................................................................31

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008) ....................................................................31

*Charles C. Chapman Bldg. Co. v. Cal. Mart*,
2 Cal. App. 3d 846 (1969) .................................................................42, 44

*Commonwealth Utilities Corp. v. Goltens Trading & Eng'g PTE Ltd.*,
313 F.3d 541 (9th Cir. 2002) .............................................................20, 40

*Cordoba v. Dillard's, Inc.*,
419 F.3d 1169 (11th Cir. 2005) ..............................................................32

*CoStar Grp., Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ............................................................31, 36

*Del Madera Props. v. Rhodes & Gardner*,
820 F.2d 973 (9th Cir. 1987) ...................................................................50

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
11 Cal. 4th 376 (1995) ...........................................................................47

*Dyniewicz v. United States*,
742 F.2d 484 (9th Cir. 1984) ...................................................................51

*Fox Broad. Co. v. Dish Network L.L.C.*,
747 F.3d 1060 (9th Cir. 2014) .............................................................24, 31

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
925 F.3d 1140 (9th Cir. 2019) ...................................................................20

*Grimmett v. Brown*,
75 F.3d 506 (9th Cir. 1996) .....................................................................59

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) ...................................................................56

*Ixchel Pharma, LLC v. Biogen, Inc.*,
930 F.3d 1031 (9th Cir. 2019) ...................................................................45

*Ixchel Pharma, LLC v. Biogen, Inc.*,
Case No. S256927 (Cal. Sept. 11, 2019) .......................................................46

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .....................................................................47, 48

*Laws v. Sony Music Entm't, Inc.*,
448 F.3d 1134 (9th Cir. 2006) ...................................................................50

*LGS Architects, Inc. v. Concordia Homes of Nevada*,
434 F.3d 1150 (9th Cir. 2006) ...................................................................38

*Loomis v. Cornish*,
836 F.3d 991 (9th Cir. 2016) .....................................................................32

*Luvdarts, LLC v. AT&T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) .............................................................24, 35, 41

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
   629 F.3d 928 (9th Cir. 2010) ...................................................................38

*Mount v. Book-of-the-Month Club, Inc.*,
   555 F.2d 1108 (2d Cir. 1977) ...................................................................51

*Nghiem v. NEC Elecs., Inc.*,
   25 F.3d 1437 (9th Cir. 1994) ...................................................................44

*Oracle Am., Inc. v. Terix Comp. Co.*,
   2015 WL 2090191 (N.D. Cal. May 5, 2015)..........................................14, 38, 39

*Oracle USA, Inc. v. Rimini Street, Inc.*,
   879 F.3d 948 (9th Cir. 2018) ...................................................................50

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) ...................................................................47

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
   50 Cal. 3d 1118 (1990) ...................................................................41, 42, 44

*Pardi v. Kaiser Found. Hosps.*,
   389 F.3d 840 (9th Cir. 2004) ...................................................................50

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ...................................................................35, 41

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ...................................................................30, 31, 36

*Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*,
   828 F.2d 211 (4th Cir. 1987) ...................................................................59

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ...................................................................51

*Prather v. Neva Paperbacks, Inc.*,
   446 F.2d 338 (5th Cir. 1971) ...................................................................52

*Quelimane Co. v. Stewart Title Guar. Co.*,
   19 Cal. 4th 26 (1998) ...................................................................44

*Reeves v. Hanlon*,
33 Cal. 4th 1140 (2004) ..................................................................45

*Smith v. Adventist Health Sys./West*,
182 Cal. App. 4th 729 (2010) ..........................................................44

*Stone v. Williams*,
970 F.2d 1043 (2d Cir. 1992) ...............................................52, 56, 58

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*,
421 F.3d 1307 (Fed. Cir. 2005) .......................................................39

*Sun Microsystems, Inc. v. Microsoft Corp.*,
188 F.3d 1115 (9th Cir. 1999) .........................................................36

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .........................................................50

*Tokuzo Shida v. Japan Food Corp.*,
251 Cal. App. 2d 864 (1967) ......................................................42, 44

*United States v. Appleby*,
2:17-cr-138-JLG, Dkt. Nos. 107-10 (S.D. Ohio)..............................14

*United States v. Kaplan*,
836 F.3d 1199 (9th Cir. 2016) .........................................................43

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*,
924 F.3d 32 (2d Cir. 2019) ..............................................................54

*Westside Center Assocs. v. Safeway Stores*,
42 Cal. App. 4th 507 (1996) ......................................................47, 49

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
705 F.2d 1515 (9th Cir. 1983) ...............................................52, 56, 58

*Youst v. Longo*,
43 Cal. 3d 64 (1987) .......................................................................50

*Zixiang Li v. Kerry*,
710 F.3d 995 (9th Cir. 2013) ......................................................43, 45

**Statutes**

17 U.S.C. § 507(b) ........................................................................................51

Cal. Bus. & Prof. Code § 17208 ...................................................................61

Cal. Code Civ. Proc. § 339(1)........................................................................59

## INTRODUCTION

The proper framework for evaluating Oracle's copyright claims and HPE's express license defense is missing from Oracle's opening brief. Because each customer at issue had a license to make (or hire a third party to make) copies of Oracle's software, Oracle conceded below that it "bears the burden of proving that [HPE's or Terix's] conduct exceeds the scope of any identified license." D.Ct. Dkt. 459 at 17. Yet, even after years of discovery, Oracle could not meet that burden. All the download and delivery copies were licensed, and Oracle was unable to establish a single instance in which HPE or Terix installed software on a server not entitled to receive it. SER8 ("we cannot tell you a specific patch that got installed on a specific server"). The district court (Tigar, J.) thus correctly ruled that Oracle failed to raise a genuine dispute of material fact necessary to avoid summary judgment.

Oracle's opening brief ignores its previous admissions, and most of the district court's rulings, and seeks only to confuse the legal issues. Oracle attempts to flip the burden of proof on the express license defense back to HPE, despite binding precedent to the contrary. Oracle also argues that *licensed* downloads of patches somehow create an inference of *unlicensed* installations, and that a licensed copy can be considered infringing if it was made with an *intent* to infringe later. Neither is correct.

Oracle also distorts the factual record. As just one example, for the customers that HPE supported directly, Oracle points to a single column ("Installed on Date") in a spreadsheet to argue that HPE *must have* installed software on unsupported servers. The district court correctly concluded that Oracle's supposition is directly contradicted by the evidence. It is undisputed that there is no way to determine from the spreadsheet whether or when patches were installed on the servers listed therein, let alone that the patches were installed by HPE. This evidence cannot support any inference of infringement with respect to this group of customers, and Oracle's evidence as to other customers was similarly deficient.

As an innovator with many copyrights and patents of its own, HPE respects the intellectual property rights of others. But HPE did not infringe Oracle's copyrights, or commit any business torts with respect to Oracle's customers. Oracle tried, and failed, to hold HPE liable for the actions of another company, Terix. Most of the evidence on which Oracle relies in this Court concerns Terix, not HPE. But Terix was a large company in its own right—with over 770 support relationships, only 5% of which were at issue in this case. Oracle's overheated rhetoric about Terix, and its supposed "scheme," is simply no substitute for Oracle's complete failure to discharge its burden of proof as to *HPE* on summary judgment.

The judgment should be affirmed.

## JURISDICTIONAL STATEMENT

HPE agrees with Oracle's jurisdictional statement.

## ISSUES PRESENTED

**I.** Whether the district court properly granted summary judgment to HPE on Oracle's copyright infringement claims because (1) Oracle failed to present sufficient evidence from which a reasonable jury could conclude that HPE or Terix installed a protected patch on a server not entitled to receive it, and (2) any pre-installation downloads and deliveries were expressly licensed.

**II.** Whether the district court properly granted summary judgment to HPE on Oracle's state-law claims given that Oracle did not present any evidence of a breached contract or harm resulting from any breach, or of a misrepresentation by HPE.

**III.** Whether the district court properly granted partial summary judgment to HPE on the grounds that Oracle's copyright claims based on alleged conduct before May 6, 2012, and Oracle's state-law claims based on alleged conduct before May 6, 2013, are time-barred, given that the undisputed evidence showed that Oracle, and Sun before it, considered suing HPE—as well as Terix and Sun/Oracle's customers—as early as 2009, but decided not to sue HPE until 2016.

**STATEMENT OF THE CASE**

## I. Factual Background

### A. The Server Support Industry

Servers are computer hardware systems able to process large amounts of data at high speeds. Servers commonly reside in datacenters housing thousands of devices. Server manufacturers, known as "Original Equipment Manufacturers" ("OEMs"), include Dell, IBM, Oracle, HPE, and formerly Sun Microsystems.

An operating system is a software program that runs on servers and interfaces with the hardware components. Over time, servers and operating systems may need updating and support. Customers generally have three support options: (i) support the equipment themselves; (ii) purchase a support contract from an OEM; or (iii) obtain customized support from a third-party maintainer ("TPM"). SER614-18; SER1077-78. "Customers hire TPMs to provide several forms of technical support for their servers, including repairing servers when they break ('hardware break-fix'), advising on software issues ('technical advisory support'), [and] applying patches and updates." ER325.

### B. HPE's Support Offerings

HPE is the OEM of HPE-branded servers, but HPE's support of its own servers is not at issue in this case. HPE also supports *non*-HPE servers, either directly or through subcontractors.

### 1. HPE Direct Support

HPE offered "outsourcing" services to customers, providing a variety of services traditionally performed by a company's IT department. This business was referred to as "direct support" in this case because the customers at issue were supported by HPE, rather than indirectly through Terix. SER1409. As the district court explained, "HPE worked together with Oracle (and previously Sun) to provide services to these customers," and Oracle even "authorized HPE to resell Oracle support offerings" to these customers, financially benefiting both Oracle and HPE. ER327; SER131; SER1093; SER1098-99.

Oracle relied at summary judgment on only two pieces of evidence for its infringement claims related to the direct support customers: (i) a spreadsheet with an accompanying list of definitions; and (ii) testimony from HPE's 30(b)(6) witness, Dave Jensen. ER426; ER494; ER799; ER803.

The spreadsheet was pulled from HPE's Enterprise Server List ("ESL") database. Servers can be reported into that database in a variety of ways; often the information is exported from other sources into ESL, including from spreadsheets, older databases, and even manually from customers who patch their own systems. SER550-54. The information is used differently by different account teams, and is not necessarily up-to-date. SER549; SER560.

Mr. Jensen testified that every direct support relationship was different and that many such relationships changed over time.  Some customers hired HPE to take inventory of the servers in their datacenters (e.g., following a merger or acquisition), or to assess whether the server was "pinging on the network" (SER559); HPE never provided support for those customers' servers at all.  These customers' servers are listed in ESL even when they are not supported by HPE, simply because they have "connectivity to another system" that *is* under HPE support.  SER559.  Other customers received software support from HPE working collaboratively with Oracle (SER546-64), while others received only hardware support (SER1280-81; SER1309)—because they elected to support their software internally (SER1077-79) or went to Oracle or another third party for software support (SER878-83; SER1146-47; SER561 ("There's just so many different services.  Patching is such a small component of what Hewlett Packard Enterprise does.")).  "[J]ust because a server is listed in ESL, [that does not] mean that HPE has ever supported the server."  SER560.

One of the columns in the ESL database is called "Installed on Date."  ER801.  As set forth in the original definitions that accompanied the ESL spreadsheet, and corroborated by Mr. Jensen's sworn testimony, "Installed on Date" "can mean three things."  ER494; SER547-48.  "[I]t could either mean the date that a kernel patch was installed, it could mean the date that a patch was released from the vendor, or it could be a date that a file was updated on the system."  SER548; ER494.  The third

item on the list (date the file was updated on the machine) is "essentially … the last date that the folder that would have patch information in it was updated, either deleted, added, modified, [or] changed." SER548. Mr. Jensen's uncontroverted testimony is that the "Installed on Date" field "is very difficult to use because you can't rely on it, you don't know where the date came from amongst those three options, and, obviously, if it's the third option, it's not very valuable." SER549.

### 2. Symantec

One customer that HPE directly supported—Symantec—was treated separately from the other customers in the case because it contracted with HPE for outsourcing services, and *also* independently contracted with Terix and Oracle to support subsets of its servers. ER328. There was no subcontracting relationship between HPE and Terix for Symantec.

As part of its contract with HPE, Symantec agreed that it would "obtain all applicable material permits and licenses required of Symantec in connection with its obligations under [the relevant] Agreement." SER994. Pursuant to that agreement, Symantec purchased Oracle support contracts, and HPE downloaded patches from Oracle's support website and installed them onto Symantec's supported servers using an Oracle-authorized tool. SER1053-54; SER1380-81. Oracle was aware of this arrangement, and frequently answered questions and assisted HPE with its support of Symantec. SER1068-74.

In 2013, Symantec entered into a separate contract with Terix for support of some older servers. SER1081-83. The uncontroverted evidence established that many Symantec servers were simultaneously under both Oracle and Terix support contracts and therefore entitled to Solaris patches. SER605; SER645-46; SER398. The uncontroverted evidence also established that the patches alleged to have been delivered to Symantec were not deemed protectable by Oracle's copyright expert. *Compare* SER941, *with* ER224.

### 3. HPE Multi-Vendor Support ("MVS")

HPE's MVS business, like other MVS providers (such as IBM, Dell, or Sun before Oracle purchased it), allows HPE to serve as a one-stop-shop for a customer's support needs within a datacenter. SER1289-91. Thus, a customer that has Dell, IBM, and Sun servers in its datacenter can contract with HPE for support—rather than separately interfacing with Dell, IBM, and Sun.

HPE (like other MVS providers) regularly subcontracts the delivery of its MVS services to other TPMs. As relevant here, one of the TPMs that HPE formerly subcontracted with was TERiX Computer Company, Inc. ("Terix"). Terix was an established third-party maintainer that specialized in support for Sun servers for more than 770 different companies, many within the Fortune 500. SER1315-29; SER1332. HPE's relationship with Terix accounted for only a small fraction of Terix's business (less than 5% of total customers). SER1315-29; SER1332. Terix

worked with dozens of other MVS providers to support its many customers, and also contracted with customers directly. SER1315; SER1332.

Many of HPE's MVS customers have large populations of aging, stable systems, which do not require access to software patches or updates, but which the customer merely wants to maintain through the end of the servers' life cycles. SER618; SER620-21. Other customers may have HPE, or one of its subcontractors, download and install patches and work with the OEM on their behalf. SER1288-92. Thus, there often are multiple parties—HPE, its subcontractor, the customer's IT department, and even the OEM—working on servers within an MVS customer's datacenter.

HPE requires each MVS customer to maintain valid operating system licenses and rights to ensure that any downloaded, archived, and installed patches are properly licensed. SER1343. For example, HPE's statements of work explain that it is the customer's "[r]esponsibilit[y]" to "[o]btain appropriate patches and updates" (SER484), or that the customer will be "responsible for the purchase of any software licenses … for access to patches" (SER664).

### C. The Solaris Operating System and Licenses

Solaris, the operating system at issue in this case, was developed by Sun to run on Sun-branded servers. ER324. In January 2010, Oracle acquired Sun. ER325. Oracle has since licensed Solaris to customers that purchase a Sun-branded server.

ER324; ER140-49.  Every single customer at issue in this case has a license to use Solaris on its Sun-branded servers.  BlueBr.56.

This case concerns Solaris versions 7, 8, 9, and 10.  Customers that purchased Solaris versions 7, 8, or 9 received the Binary Code License Agreement ("BCL"), which states:

> Sun grants you a non-exclusive and non-transferable license for the internal *use* only of the accompanying software and documentation and any error corrections *provided* by Sun (collectively "Software") by the number of users and the class of computer hardware for which the corresponding fee has been paid.

ER142 (emphases added).  Customers that purchased Solaris version 10 received the Software License Agreement ("SLA"), which states:

> Subject to the terms of your Entitlement, Sun grants you a nonexclusive, nontransferable limited license to *use* Software for its Permitted Use for the license term….  The terms and conditions of this Agreement will apply to any Software updates, *provided* to you at Sun's discretion, that replace and/or supplement the original Software, unless such update contains a separate license.

ER148 (emphases added).  Solaris licensees are thus permitted to "use" "Software updates" and "error corrections" that are "provided" by Sun or Oracle.  (It is undisputed that the Solaris patches at issue are "Software updates" and/or "error corrections" under the licenses.  D.Ct. Dkt. 459 at 3-4.)

Before it was acquired by Oracle in 2010, Sun "provided" Solaris patches for "use" in several ways, but its overriding policy was to provide a substantial number of patches to the public for free—"to anyone who wanted to download them."

SER425; *see also* SER72; SER507.  Sun released every security-related patch and firmware update for free.  SER473; SER501-02.  Sun also released for free the new Solaris operating system "versions," which included all of the patches released since the prior version.  SER414-17.  Many customers thus lawfully received Solaris patches without a Sun support contract.  SER57-58.

Upon acquiring Sun, and with no forewarning to customers, Oracle reversed many of Sun's practices and "lock[ed] down" access to *all* Solaris patches—even those Sun had already made publicly available for free.  ER325; SER432.  Oracle required Solaris licensees to purchase annual support contracts on a "per system" (per server) basis to access and download patches.  ER324-25.  Oracle's support contracts must be paid up front (ER340), and a customer that purchases a support contract receives a customer support identifier, which is used to create credentials to access Oracle's My Oracle Support ("MOS") website (ER125).  MOS is a "secure web portal" where Oracle makes available for download its patches and updates.  ER125; ER325.  Only customers that have an active support contract have the ability to log-in to MOS and download patches.  ER125; ER325.

As the district court explained, a TPM may exercise the customer's rights as a licensee to "use" the software.  ER325 ("an agent … such as a third party main-tainer" is authorized to "act[] on the customer's behalf"); SER131; SER1093; SER1098-99.  A TPM may log into MOS using the customer's credentials associated

11

with an active support contract and download a Solaris patch on the customer's behalf. ER325; SER538-41. The TPM may copy and store the patch in a repository or archive, so the patch may be tested in development environments before being installed on the customer's server. SER356-57; SER1102; SER1120; SER1182-83. The TPM may deliver the patch to the customer via a File Transfer Protocol ("FTP") site or other method. ER138; ER325; SER356-57; SER1093; SER1098-99; SER1120; SER1305. And the TPM may install the patch onto the customer's server. ER138; ER325; SER1093; SER1098-99. The patch may be installed even after the server is no longer covered by an Oracle support contract, so long as the server was covered by a support contract when the patch was made available on MOS in the first place. ER325; SER356-62; SER521; SER538-41; SER1102; SER1119; SER1182-83. All of these copies are licensed "use[s]" of patches "provide[d]" by Oracle.

Notably, many customers choose to place only certain servers under an Oracle support contract, because only those servers require access to patches. *E.g.*, SER1278-84. For instance, aging, stable systems generally do not require access to software patches or updates, and thus many customers would exclude these servers from Oracle support, while keeping newer servers on Oracle support so that patches and updates could be installed on the newer servers. SER618; SER620-21.

### D. Oracle Targets the TPM Market and Sues Terix

Shortly after acquiring Sun, Oracle began to sue its TPM competitors. By March 2010, Oracle had identified "HP" and "Terix" as purportedly "[t]he most active unauthorized Third Party Maintainers competing with Sun" (SER764), noting that both "[c]laim[ed] to legitimately source and install Sun's non-security related software patches and Sun spares" (ER332; *see also infra* Part III.B).

According to Oracle, Terix was among a group of companies who subscribed to the theory that, notwithstanding Oracle's "lockdown" of patches, customers had the legal right under their Solaris licenses to *all* patches ever released by Sun or Oracle. BlueBr.40-41. Terix communicated this theory to some of its 700+ customers in what it called a "Clearvision" presentation. SER1142-43; SER1314; SER1332. The customers then decided whether they had the rights to those patches and whether to propagate them to servers not covered by support contracts, and the legal departments for sophisticated customers determined that Terix's theory was correct. SER493. Despite HPE's repeated requests to learn about the Clearvision presentation, Terix refused to show it to HPE because, although they worked together on 35 accounts, HPE and Terix were also competitors and Terix had over 700 customers of its own. SER111; SER569; SER572; SER1368; SER1375. Terix called Clearvision its "secret sauce." SER111.

Despite suspecting (or having reason to know) since at least 2010 that Terix provided Solaris patches to some of Terix's many customers, Oracle did not sue Terix until July 2013. Contrary to Oracle's submission (BlueBr.24), the magistrate judge in the earlier *Terix* case "never made a finding that Terix committed copyright infringement." ER326. Indeed, that court expressly found that there were "substantial questions" on Oracle's copyright infringement claims. *Oracle Am., Inc. v. Terix Comp. Co.*, 2015 WL 2090191, at *4 (N.D. Cal. May 5, 2015).

The *Terix* case settled as set forth in a stipulated judgment, which does *not* state that Terix committed copyright infringement or engaged in fraud. SER97. The settlement merely resolved the parties' various claims against one another, including Terix's antitrust claims against Oracle, without any admissions, stipulation, or finding that Terix committed copyright infringement. SER97; D.Ct. Dkt. 820 at 1-3. In 2017, four Terix executives pleaded guilty to conspiracy to commit wire fraud in connection with their alleged use of fake names and addresses to download patches from MOS. *See United States v. Appleby*, 2:17-cr-138-JLG, Dkt. Nos. 107-10 (S.D. Ohio). None of their pleas admitted to infringement, installation, or copying of Oracle's intellectual property. HPE and its customers are not referenced in those proceedings.

## II. Procedural Background

### A. Oracle Sues HPE

Oracle sued HPE in 2016, seeking primarily to hold HPE indirectly liable for Terix's alleged conduct. Oracle asserted claims for indirect and direct copyright infringement, intentional interference with contract, intentional interference with prospective economic advantage, and unfair competition under California Business and Professions Code Section 17200. ER328. The parties litigated—and the district court resolved—Oracle's infringement claims based on three distinct categories of customers: (1) HPE's direct support customers, (2) Symantec, and (3) the joint HPE/Terix customers. ER327-28; D.Ct. Dkt. 533 at 9-17.

After years of discovery, the parties filed cross-motions for summary judgment. ER329. Oracle filed a motion for partial summary judgment on its copyright infringement claims and some of HPE's affirmative defenses. ER329. HPE filed a motion for summary judgment on all of Oracle's claims, and an alternative motion for partial summary judgment or a Rule 56(g) order. ER329. The district court denied Oracle's motion, and "grant[ed] summary judgment to HPE on all claims." ER342.

*First*, the district court concluded that Oracle's copyright claims based on conduct prior to May 6, 2012, and Oracle's state-law claims based on conduct prior to May 6, 2013, are barred by their respective statutes of limitations. ER334-35. That

ruling was based on substantial undisputed evidence showing that Oracle either actually knew or had reason to know of the challenged conduct before those dates and that Oracle could not establish fraudulent concealment to toll the limitations periods. ER334-35.

*Second*, as to the remaining copyright claims, the district court construed the Solaris licenses as permitting download and delivery of patches for customers with an Oracle support contract, but held that patches could be installed only on servers under Oracle support contracts at the time of installation or release and download of the patch. ER324-25, ER338-39. To establish copyright infringement liability, Oracle therefore was required to present "(1) evidence that HPE [or Terix] installed a patch on a server that was not supported by an Oracle support contract, and (2) evidence that the patch was released and downloaded while that server was not on contract." ER338.

The district court reviewed Oracle's direct and indirect infringement claims by category of customer (direct support, Symantec, and joint HPE/Terix), and found that Oracle failed to meet its evidentiary burden as to each category.

As to direct support customers, Oracle failed to "introduce[] evidence" that "HPE installed a patch on a [direct support customer's] server that was not supported by an Oracle support contract." ER337-38. Oracle could not identify *who* installed

any patches (i.e., HPE, Oracle, or a third party), or *whether* and *when* a patch was actually installed. ER337-38.

Likewise, Oracle's claims regarding Symantec failed because Oracle's evidence did not show that any of the patches it identified as having been delivered to Symantec contained protectable code. ER336. Oracle also could not identify a Symantec server that was not covered by an Oracle support contract, and thus could not "show that any particular patch was installed on an off-contract server." ER336.

For Oracle's indirect infringement claims involving the joint HPE/Terix customers, "Oracle ha[d] no evidence regarding the actual installation of individual patches on any individual server" belonging to a joint HPE/Terix customer. ER339.

*Third*, the court granted summary judgment to HPE on Oracle's remaining state-law claims. The court ruled for HPE on Oracle's intentional interference with contract claims because Oracle failed to present any evidence that a customer breached a contract with Oracle that resulted in any economic harm (ER340); on Oracle's remaining claims for intentional interference with prospective economic advantage because Oracle presented no evidence that HPE committed an "independently wrongful act" (ER341); and on Oracle's unfair competition claim because it was derivative of the interference claims (ER342).

This appeal followed.

# SUMMARY OF ARGUMENT

**I.** Summary judgment should be affirmed on Oracle's copyright infringement claims.

**A.** Oracle failed to raise a genuine dispute of material fact regarding the installation of a protected Solaris patch on a server not entitled to receive it. The district court carefully analyzed three categories of customers: (1) direct support customers; (2) Symantec; and (3) joint HPE/Terix customers. For each category, Oracle bore the burden of showing that HPE or Terix installed protected patches outside the scope of the relevant licenses. Oracle did not carry that burden for the direct support customers (including Symantec), and Oracle does not even challenge the district court's ruling on installations for joint HPE/Terix customers.

**B.** Oracle also failed to create a triable issue of fact regarding the download or delivery of a protected Solaris patch. Each joint HPE/Terix customer held a Solaris software license, and each customer had an Oracle support contract. As a result, the licenses permitted each customer to download patches and organize, archive, and deliver them for later use; and Oracle does not dispute that Terix was permitted to make these copies on the customers' behalf. The pre-installation download and delivery copies of Oracle's software made by HPE for Symantec were licensed for the same reasons. Oracle does not argue there were any infringing downloads or deliveries for the other direct support customers.

**II.** The Court should also affirm summary judgment on Oracle's state-law claims.

**A.** Oracle's interference with contract claims fail because Oracle presented no evidence that any of the relevant customers breached a support contract with Oracle, as opposed to lawfully terminating or declining to renew their contracts. Oracle also failed to present any evidence that it suffered damages, given that customers pre-pay their support contracts and forfeit that payment upon leaving Oracle support.

**B.** Oracle's interference with prospective economic advantage claims fail because Oracle presented no evidence that HPE engaged in wrongful conduct that disrupted Oracle's economic relationships. Oracle cites purported misrepresentations or activities by Terix, but none by *HPE*. Oracle also cannot establish causation, because there is no evidence that even a single customer left Oracle based on any (nonexistent) misrepresentation by HPE.

**C.** Oracle's unfair competition claim is wholly derivative of its interference claims and likewise fails.

**III.** The district court properly enforced the applicable statutes of limitations.

Any claims accruing more than three years (federal) or two years (state) before May 6, 2015 are time-barred. Oracle attempted to reach back further using the

doctrine of fraudulent concealment, but Oracle was not ignorant of the existence of its causes of action before the pertinent dates.

**A.** As the district court correctly concluded, undisputed evidence showed that Oracle had actual knowledge of Terix's conduct since at least 2009, and that Oracle knew of, or at least strongly suspected, HPE's alleged wrongdoing starting in 2010. Oracle did not undertake a reasonable investigation upon learning of this conduct. Thus, all federal claims accruing before May 6, 2012 are time-barred.

**B.** Oracle's state-law claims accruing before May 6, 2013 are time-barred for largely the same reasons.

**STANDARD OF REVIEW**

"The court reviews the district court's grant of summary judgment de novo." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1143 (9th Cir. 2019). "Summary judgment is appropriate if, viewing the evidence in light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 1144. This Court is "free to affirm a grant of summary judgment on any grounds supported by the record." *Commonwealth Utilities Corp. v. Goltens Trading & Eng'g PTE Ltd.*, 313 F.3d 541, 546 (9th Cir. 2002).

# ARGUMENT

As Oracle expressly recognized below but refuses to acknowledge on appeal, once HPE identified the relevant licenses, Oracle bore the burden of demonstrating *unauthorized* copying beyond the scope of the licenses. All of the downloads and deliveries were authorized by the customer licenses; and Oracle has *no* evidence of unauthorized installations by HPE or Terix. No reasonable jury, therefore, could find in Oracle's favor on any of its copyright infringement claims. Likewise, Oracle failed to raise a genuine issue of material fact with respect to its state-law interference and unfair competition claims.

In an effort to overcome its complete failure of proof, Oracle spins a tale of Terix's supposed "scheme." But the defendant here is HPE, not Terix, and under established law and the undisputed facts, no reasonable jury could find *HPE* liable for any specific act of infringement or interference. Having chosen to settle with Terix, Oracle cannot accuse HPE of guilt by association. The district court properly entered summary judgment for HPE.

## I.    The District Court Correctly Granted Summary Judgment to HPE on Oracle's Copyright Infringement Claims

Maintaining and updating computer software requires making copies of software patches. Typically, the customer (or its service provider) will *download* a patch from a website, *deliver* it to a storage platform, and *install* it on the server(s) that

21

need to be updated. Each step can entail making a copy; and where the patch contains expression protected by copyright, each step can constitute infringement unless authorized by a license.

The Solaris licenses provide licensees with a nonexclusive right to "use" the Solaris operating system, as well as any patches "provided" by Sun. ER142; ER148. A Solaris patch is "provided" either when it is made available to the public for free or when it becomes available for download on Oracle's MOS website. ER325; SER72; SER425; SER507. A patch is available for download on MOS only to customers with an active Oracle support contract. ER125; ER325. In fact, it is technologically impossible for a customer to download a patch from MOS without an active support contract. ER125; ER325.

Because it is undisputed that every single customer at issue had a Solaris license *and* an active Oracle support contract (BlueBr.56; D.Ct. Dkt. 533 at 4;



22

SER538-41; SER670-71; SER1526; ER1466), every download and delivery of a Solaris patch in this case was licensed.  In contrast to the inaccurate diagram created by Oracle for purposes of this appeal (BlueBr.19), the diagram below depicts this process.  If a customer has eight servers running Solaris, but purchases Oracle support contracts for only six of those servers (because the other two are near the end of their life, for example), a TPM acting on the customer's behalf may access MOS, *download* a patch, *store* the patch in a repository, and *deliver* the patch to the customer via an FTP site (the three steps in the diagram below).  The TPM (or the customer) also may then *install* the patch onto the customer's six servers covered by Oracle support contracts (the blue servers), but not onto the remaining two servers (the gray servers).  SER1093; SER1098-99.

These license terms explain the district court's differential treatment of *downloads and deliveries*, on the one hand, and *installations*, on the other.  If the customer had *any* of its servers under a support contract at the time of patch download and delivery, then those copies are licensed; whereas an installation is licensed only if the particular server on which the patch is installed is supported by an Oracle support contract at either the time of the installation or download.  ER325 ("The TPM's delivery of a patch to an FTP site is licensed if the customer who accessed the FTP site has a server covered by a support contract, provided that the customer or TPM then installs the patch only on that particular server and does not 'propagate' the

patch to other, off-contract servers.  If a customer has an active support contract when it downloads a patch, the customer has the right to install the patch at a later time, even if the server on which the patch is installed is no longer covered by a support contract."); *see also* SER1102; SER1120.  In other words, liability can attach *only* for installation of patches on unentitled servers—as depicted in gray on the diagram above.

As to each type of copying, the district court construed the licenses in light of basic copyright principles, which Oracle does not challenge on appeal.  The district court then found that, under those unchallenged constructions, Oracle had not presented sufficient evidence to raise a genuine issue of material fact as to unlicensed conduct by HPE or Terix.  Oracle's appeal on copyright liability depends solely on disagreements with the district court's evaluation of the evidence.  BlueBr.30-36.

### A.  Oracle Failed to Raise a Triable Issue Regarding Installations

The district court carefully analyzed Oracle's claims based on three categories of customers and the evidence presented for each:

1. direct support customers, which are the subject of Oracle's claims of direct infringement, and for which there must be evidence of unlawful copying by HPE (*Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014));

2. Symantec, which also is the subject of Oracle's claims of direct infringement (the evidence of unlawful copying likewise must be by HPE); and

3. joint HPE/Terix customers, which are the subject of Oracle's claims of indirect infringement, for which the underlying infringement must be based on evidence of specific acts of unlawful copying by Terix (*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013)).

On appeal, Oracle disregards these distinctions and points to evidence without describing its relevance to a particular claim or customer. BlueBr.29-43. But when the elements of each claim are analyzed with the corresponding evidence of record, it is clear that Oracle has failed to create a genuine issue of material fact as to each— albeit for different reasons. Indeed, Oracle does not even challenge certain conduct with respect to all customers, as the following chart demonstrates:

| | Direct Support | Symantec | Joint HPE/Terix |
|---|---|---|---|
| Installation | challenged | challenged | **NOT** challenged |
| Download/Delivery | **NOT** challenged | challenged | challenged |

### 1. Direct Support Customers

The district court ruled that Oracle failed to raise a genuine issue of material fact as to this category of customers. ER337-38. Oracle challenges that ruling on

appeal, arguing that its evidence is sufficient to go to a jury. BlueBr.31-34. Oracle is wrong.

At the outset, it is important to note that Oracle *does not challenge* the legal standard applied by the district court in evaluating the evidence pertaining to the direct customer category. In particular, the district court ruled: "To enable a reasonable jury to conclude that HPE committed direct copyright infringement, Oracle must provide (1) evidence that HPE installed a patch on a server that was not supported by an Oracle support contract, and (2) evidence that the patch was released and downloaded while that server was not on contract." ER338.

It is equally important to note that Oracle *does not challenge* the district court's conclusion that "Oracle has not done this [i.e., met the two-step standard above] as to any particular patch and server." ER338. In its appellate brief, Oracle does not even attempt to show that, "as to any particular patch and server," there is evidence that (1) HPE installed a patch on an unsupported server *and* (2) that patch was downloaded or installed while that server was not on contract. Given that Oracle does not dispute this legal standard, its failure to adduce any evidence to meet the standard means summary judgment was properly entered for HPE.

The arguments Oracle does make on appeal do not demonstrate any error in the summary judgment ruling as to the direct support customers. Oracle offers only the opinion of its technical expert, Christian Hicks, which is based solely on the

26

"Installed on Date" column of the ESL spreadsheet produced by HPE in discovery. *See supra* Part I.B. Oracle insists that the "Installed on Date" column of the HPE spreadsheet is alone sufficient to create a genuine issue of material fact. BlueBr.31-34. That argument is foreclosed by the undisputed evidence in the summary judgment record.

*First*, as the district court carefully explained, the "spreadsheet … does not actually show when the patches were installed." ER337. Indeed, Hicks conceded he "lacked evidence to conclude when these patches were installed." ER337-38. That is critical because "Oracle customers can lawfully download patches during the time they are under a support contract, and then install them at a future date after the contract has expired." ER337. Oracle does not dispute—indeed, it does not even *mention*—any of this in its appellate brief.

*Second*, Oracle castigates the district court for failing to resolve a supposed "ambiguity" in the meaning of "Installed on Date" in Oracle's favor on summary judgment. BlueBr.32. But the term "Installed on Date" is not "ambiguous" in the sense that the parties dispute the term's meaning. Rather, as the court explained, it is *undisputed* that "Installed on Date," as used in this spreadsheet, actually has *three* distinct meanings—and that there is no way to tell with respect to any particular customer or server which meaning applies without resorting to rank speculation. ER338; ER494.

The uncontroverted testimony of HPE's Rule 30(b)(6) witness, Dave Jensen, was that the "Installed on Date" column "can mean three things." SER547-48 ("It could either mean the date that a kernel patch was installed, it could mean the date that a patch was released from the vendor, or it could be a date that a file was updated on the system"). In other words, the "Installed on Date" could merely mean the date that a folder containing patch information was updated, even though the last patch installation occurred years earlier—which, of course, would not be evidence of an infringing copy. SER547-48 (testifying that the third item on the list is "essentially … the last date that the folder that would have patch information in it was updated, either deleted, added, modified, you know, changed," and is therefore "not very valuable" information because one "cannot tell" by looking at an individual server on the ESL spreadsheet whether a patch was installed or whether the folder was merely updated). There simply is *no way* to know what "Installed on Date" means for any particular entry, and it was never intended to have the universal meaning Oracle ascribes to it in this litigation.

*Third*, Oracle complains that the district court "speculat[ed]" that "a customer might have downloaded the patch during the time the server was still supported by Oracle," such that installation of the patch could not be infringing. BlueBr.33. According to Oracle, Hicks's analysis showed that 188 installations involved patches that Oracle did not release until after the server on which the patch was installed had

left Oracle support.  BlueBr.33.  This assertion is false, as Hicks admitted that he just *assumed* that patches were installed on the dates reflected in the "Installed on Date" column of the spreadsheet, and that he does not even know who performed those purported installations.  SER367-68; SER1185-87.  Oracle does not mention (let alone challenge) the district court's holding that Oracle's construction of "Installed on Date" is factually impossible and would lead to "false positives."  ER338.  Indeed, at his deposition, Hicks admitted that his interpretation would mean that patches were installed on servers *before* Oracle even released them.  SER1189-92.

*Fourth*, Oracle lambastes as "baseless" what it calls "the *district court's assertion* that 'even if the "installed on date" meant what [Oracle] said, Oracle could not identify any particular non-supported server on which a protected patch was improperly installed.'"  BlueBr.33 (quoting ER338) (emphasis added).  But the district court clearly prefaced this "assertion" with "*as Oracle conceded at oral argument*."  ER338 (emphasis added).  Indeed, Oracle's lead counsel stated at the summary judgment hearing that:  "we cannot tell you a specific patch that got installed on a specific server."  SER8.  Oracle may regret having done so, but it is unfair to criticize a court's reliance on this concession—which remains binding on Oracle.

*Fifth*, Oracle argues that the district court "contorted the evidence" by holding that "Oracle has not introduced evidence that identifies who actually installed the offending patches."  BlueBr.34.  But Oracle's own expert admitted that he merely

*assumed* that HPE made the installations on the spreadsheet, and that he does not know who actually installed the patch. SER1185-87. That assumption (which is not even an inference) is itself unreasonable, because it is undisputed that the ESL database reflects servers that HPE did not even support, let alone servers on which *HPE* installed patches. *See* SER564 (Jensen testifying that "If ESL indicates that a patch was applied, it could mean anything from the customer had applied a patch and has connectivity into … the source data that allows ESL to get updated …. It could have been updated by the customer, could have been updated by a third party organization that the customer had hired to perform that work"). Thus, a jury could only speculate as to *who* (HPE, Oracle, or the customer) installed the patch, as the spreadsheet does not identify whether "the patch was installed by HPE." SER563.

In lieu of *evidence*, Oracle cites its own summary judgment brief (BlueBr.34 (citing ER444)), its expert report (BlueBr.34 (citing ER1323-24)), and a letter between counsel regarding a discovery dispute (BlueBr.34 (citing ER1365)). Oracle ignores countless communications in which HPE consistently stated it did not install patches for every direct support customer, just as the undisputed evidence shows. *See, e.g.*, D.Ct. Dkt. 258-2.

This failure to present evidence regarding who installed a patch is dispositive because Oracle must "show causation" by HPE. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017), *cert. denied,* 138 S. Ct. 504 (2017). "Infringement

of the reproduction right requires 'copying *by* the defendant,'" not by a third party. *Fox Broad. Co.*, 747 F.3d at 1067. Accordingly, even if the jury could infer an installation on an off-contract server (it could not, based on the evidence presented at summary judgment), Oracle still bears the burden of producing evidence from which a jury could conclude "*who* made [the] cop[ies]" of the copyrighted works. *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008). No jury could reasonably conclude that HPE installed any patches. It is well-established that a plaintiff seeking to hold a defendant Internet Service Provider directly liable because an infringing image appears on the ISP's server cannot get past summary judgment without first demonstrating evidence that the ISP, as opposed to a third party, uploaded the image. *E.g.*, *Perfect 10*, 847 F.3d at 668; *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 442 (5th Cir. 2017), *cert. denied,* 138 S. Ct. 236 (2017); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 546 (4th Cir. 2004). The same principle applies here.

Thus, because the indeterminate column in the ESL spreadsheet does not permit any reasonable inferences on whether a Solaris patch was installed in an unauthorized manner by HPE, no reasonable jury could discern whether (let alone by whom) a patch was installed on a server not entitled to receive it, without engaging in rank speculation. *See U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must

set forth non-speculative evidence of specific facts"). And "[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005); *see also Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("mere … speculation do[es] not create a factual dispute for purposes of summary judgment"). The judgment on direct support customers should therefore be affirmed.

### 2. Symantec

Oracle argues that summary judgment was improper because an HPE employee testified that HPE installed patches on Symantec's servers, and that some of Symantec's servers were not covered by Oracle support contracts at the time. BlueBr.35. As the district court recognized, this testimony does not raise a triable issue of material fact. ER336-37.

*First*, contrary to Oracle's representation on appeal that "the district court accepted for purposes of its decision that Oracle owns valid copyrights in the Solaris patches at issue" (BlueBr.31), the district court in fact held that "Oracle's evidence does not show that any patch delivered to Symantec was protectable" (ER336). In the district court, Oracle identified six patches that allegedly were delivered to Symantec, but not one of those six patches was deemed protectable by Oracle's copyright expert. *Compare* SER941, *with* ER224 ("list of individual Solaris patches that

[Dr. Goldberg] understand[s] HPE or Terix downloaded for which [he] determined that there are functions containing protectable code"). Oracle thus failed to raise a triable issue on this element of its copyright infringement claims with respect to Symantec, and summary judgment in HPE's favor was warranted on this basis alone.

*Second*, "Oracle cannot show that any *particular* patch," even if protectable, actually "was installed on an off-contract server" not entitled to receive it. ER336. Indeed, it is undisputed that at all times, Symantec maintained Oracle support contracts on many of its servers (including all servers that were three years old or newer). SER645-46. And it is undisputed that Symantec asked HPE to install patches received from Terix onto servers that *were also* covered by Oracle support contracts. SER647-48.

The mere fact that HPE received a patch from Terix and then installed it on a server does not raise a triable issue of material fact that the server was *not* covered by an Oracle support contract. Oracle conceded as much below, when it admitted that it cannot "identify[] specific servers on which [any Symantec] patches were installed." SER1223-24. This is because although Oracle subpoenaed and deposed Symantec, it never asked for installation logs or other records that might show what patch was installed where and when. SER1122. That is not a fact dispute. That is a complete failure of proof.

Moreover, it is undisputed that many of Symantec's servers were running older versions of Solaris, such as Solaris version 6, that are not at issue in this case because Sun released all of the patches publicly for that version before Oracle acquired Sun. SER425; SER630; SER640; SER645. Symantec's witness testified that Symantec hired Terix to support these older servers while it kept the newer servers under Oracle support. SER630; SER640; SER645. Thus, again, the fact that HPE installed a patch, without more, cannot raise an inference of copyright infringement, as Oracle has presented no evidence that the patch was not publicly released by Sun on a Solaris version not at issue in this case, or for newer versions, that the patch was not installed on a server entitled to receive it. ER336.

Oracle still has "no answer for [either of] these arguments, and they dispose of Oracle's direct infringement claims as to Symantec." ER336. Indeed, Oracle's only argument on appeal is that the district court erred in denying it the ability to use "circumstantial" rather than "direct" evidence of copying for Symantec. BlueBr.35. But that is not the issue. As the district court correctly held, Oracle has *no* evidence of unlicensed copying by HPE for Symantec—direct, circumstantial, or otherwise.

### 3.  Joint HPE/Terix Customers

On appeal, Oracle does not challenge the district court's ruling that "Oracle has no evidence regarding the actual installation of individual patches on any individual server" belonging to a joint HPE/Terix customer (ER339), and therefore has

34

waived any such challenge. Because there is no evidence from which a reasonable jury could conclude that Terix installed a patch on a joint HPE/Terix customer's unentitled server, Oracle cannot take a claim against HPE for indirect infringement to trial. ER339; *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("*Amazon*").

Oracle does not challenge this ruling because it had to establish "specific acts of infringement" by Terix (*Luvdarts*, 710 F.3d at 1072; *BMG Rights Mgmt. (U.S.) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 311 (4th Cir. 2018)), and its expert admitted it cannot. Oracle's forensic expert conceded that he could not "verify that [patches] were actually … installed" by Terix for any joint HPE/Terix customers. SER1203-04. He also conceded that he could not "identify any servers on which any of the patches were actually installed." SER1214. Thus, there was no triable issue of fact regarding unauthorized installations for any of the joint HPE/Terix customers even before Oracle forfeited the argument on appeal. The district court therefore correctly disposed of Oracle's indirect infringement claims on summary judgment.

## B. Oracle Failed to Raise a Triable Issue Regarding Downloads and Deliveries

Without evidence that HPE (or Terix) installed even a single patch on an unentitled server, Oracle is left complaining about "pre-installation" patch downloads and deliveries. BlueBr.36. Oracle raises this complaint only for the joint HPE/Terix

35

customers and Symantec; Oracle does not argue that there were any infringing downloads or deliveries for the direct support customers. The district court did not "ignore[]" these download and delivery copies, as Oracle unfairly charges. *See* BlueBr.37. Rather, the district court correctly held that all of these copies were licensed, and therefore cannot give rise to a claim of infringement against HPE.

### 1. Terix's Intent Is Immaterial to Liability

Oracle points to evidence of downloads and deliveries by Terix (BlueBr.37) in an attempt to secure reversal on its indirect infringement claims. It is a basic tenet of copyright law that licensed conduct cannot give rise to infringement. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999). As explained below, the download and delivery copies were licensed, which is presumably why Oracle focuses on appeal on a supposed Terix "scheme" (*e.g.*, BlueBr.37-38), and argues that it should get to a jury on Terix's purported *intent* to make infringing copies of the downloaded and delivered patches later. In other words, Oracle seeks to hold HPE responsible for Terix's ostensibly nefarious "purpose" in making *lawful* download and delivery copies. BlueBr.18. That is not a viable theory of copyright liability.

There is no such thing as attempted or inchoate infringement, or a conspiracy to infringe. Direct infringement is a strict liability claim. *E.g.*, *Perfect 10*, 847 F.3d at 666; *CoStar*, 373 F.3d at 548. That is why purchasing a CD with an intent to later

36

make bootleg copies is not copyright infringement—only the subsequent copying is infringing. Nor is it infringement to borrow a textbook from a library with the intent to make illicit photocopies—only the subsequent copying is infringing. So too, downloading a patch pursuant to a license with the intent to later make an unlicensed copy is not copyright infringement—only the subsequent unlicensed copy gives rise to infringement. *Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 198 (1931) ("Intention to infringe is not essential under the [Copyright] [A]ct."). Put simply, Oracle cannot point to licensed copying (pre-installation downloads and deliveries) to create a genuine issue of material fact about unlicensed copying (installations).

### 2. The District Court Properly Held Oracle to Its Burden of Proving That the Downloads and Deliveries Were Infringing

Oracle and its amicus contend that the district court erred in placing the burden on Oracle to prove that these download and delivery copies exceeded the scope of the Solaris licenses. BlueBr.42-43; Copyright Alliance Br.3. But Oracle has waived this argument, and it should not be considered on appeal. Oracle's position in the district court, which was correct, was that "*Oracle* bears the burden of proving that the conduct exceeds the scope of any identified license." D.Ct. Dkt. 459 at 17 (emphasis added). Oracle's admission aside, the district court properly allocated the burdens of proof here.

37

The district court correctly held that HPE had "the initial burden of identifying any license provision that puts it in the clear." *Terix*, 2015 WL 2090191, at *1. HPE did just that, citing "Oracle's Binary Code License … and Software License Agreement" as "expressly licens[ing] patches and updates for Solaris 8, 9, and 10 that are 'provided' by Sun or Oracle." D.Ct. Dkt. 471 at 4. HPE further explained at length over several pages of summary judgment briefing that these license provisions permitted Terix (for the joint HPE/Terix customers) and HPE (for Symantec) "to download and deliver Oracle software as an agent of the customer with a license to obtain that software," citing the Solaris licenses, Oracle's MOS Terms of Use, the fact that every customer at issue had an Oracle support contract at the relevant time, and numerous other pieces of evidence. D.Ct. Dkt. 470-3 at 9-10 & nn.4-5; D.Ct. Dkt. 539 at 11-2; D.Ct. Dkt. 576 at 2-3; *see also* ER324-25 (Oracle does not argue any improper downloads or deliveries for the direct support customers.).

It is black-letter law that once HPE identified the licenses in response to Oracle's claims of infringement, "the copyright owner," i.e., Oracle, then "[bore] the burden of proving that the defendant's copying was unauthorized." *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995); *see also*, *e.g.*, *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156-57 (9th Cir. 2006); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010); *Baisden v. I'm*

*Ready Prods., Inc.*, 693 F.3d 491, 507 (5th Cir. 2012); *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1315 (Fed. Cir. 2005); *Terix*, 2015 WL 2090191, at *1. Oracle failed to do so, and its argument on appeal that "the district court ignored Oracle's evidence" of infringement in the form of download and delivery copies therefore misses the mark. BlueBr.37. The district court carefully construed the Solaris licenses and determined that Terix's alleged downloads for and deliveries to joint HPE/Terix customers and HPE's alleged downloads for and deliveries to Symantec did not exceed the scope of the Solaris licenses and therefore cannot give rise to claims of infringement as a matter of law. ER335-39.

Oracle argues that the district court erred by not adopting the license construction of the magistrate judge in the *Terix* case. BlueBr.40-41. But in that case, Terix advanced an entirely different reading of the licenses than the construction at issue in this case. Terix proposed an "all-or-nothing" license construction, i.e., that Solaris licensees (or TPMs acting on their behalf) are "authorized to download patches ad infinitum even after the support contract expired." BlueBr.41. In other words, Terix's interpretation was that the Solaris licenses "entitle[] Solaris licensees to *any* patch for *any* version of Solaris software and firmware *at any time*." *Terix*, 2015 WL 2090191, at *4 (last emphasis added). The *Terix* court rejected that "perpetual license" argument. *Id.*

In this case, HPE never advanced—and the district court never adopted—the "perpetual license" construction at issue in the *Terix* litigation. Rather, HPE's proposed construction was based on the text of the Solaris licenses and the testimony of Oracle executives. That straightforward construction (accepted by the district court in *this* case), is that the licenses permit a customer to download and receive a patch *if* it has a server under an Oracle support contract, and then to install that patch *if* the server was under contract either at the time the patch was released and downloaded or at the time of installation. ER325, ER338. That construction accords with Oracle's *own* understanding of the licenses. ER325 (district court citing Oracle's own summary judgment papers in construing the license terms). In fact, Oracle does not challenge on appeal the specific constructions *actually* adopted by the district court in *this* case. Its reference to the *Terix* case is, thus, a false trail.

\*     \*     \*

In sum, Oracle did not submit evidence sufficient to create a genuine dispute of material fact that specific acts of infringement were committed by HPE (for direct support customers and Symantec) or Terix (for joint HPE/Terix customers). Accordingly, the district court correctly granted summary judgment to HPE on all of Oracle's copyright claims, and this Court should affirm.[1]

---

[1] This Court is also "free to affirm a grant of summary judgment on any grounds supported by the record" (*Commonwealth Utilities Corp.*, 313 F.3d at 546), and Oracle's additional failures of proof on the elements of its indirect infringement claims

## II. The District Court Correctly Granted Summary Judgment on Oracle's State-Law Claims

The district court's entry of summary judgment on Oracle's intentional interference claims also should be affirmed because Oracle failed to present evidence of a breached contract or resulting harm, or of any misrepresentation by HPE. Oracle's derivate unfair competition claim fails for the same reasons.

### A. The District Court Correctly Granted Summary Judgment on Oracle's Intentional Interference with Contract Claims

To survive summary judgment on its claims for intentional interference with contract, Oracle was required to present evidence that a customer "actual[ly] breach[ed] or disrupt[ed]" an existing "contractual relationship" with Oracle, and that the breach or disruption caused Oracle to suffer "resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). Oracle failed to present evidence of either element below, and the district court therefore ruled in HPE's favor on this claim. ER340. The Court should affirm.

---

form an independent basis for affirmance. It failed to present evidence of (1) "actual knowledge of specific acts of infringement," that (2) "either induced, caused, or materially contributed to the infringing conduct" (*Luvdarts*, 710 F.3d at 1072), as required to establish contributory infringement. It also failed to present evidence that HPE had "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so" (*Amazon*, 508 F.3d at 1173), as required to establish vicarious infringement.

### 1. Oracle Failed to Present Evidence of a Breach of Contract

Oracle failed to present evidence that a customer "actual[ly] breach[ed]" a contract with Oracle. *Pac. Gas & Elec.*, 50 Cal. 3d at 1126. Throughout discovery, Oracle argued that customers breached their support contracts when they declined to renew them. ER1354-55; SER1253; SER1255; SER1257. Oracle abandoned this theory at summary judgment because encouraging (or even causing) a third party not to exercise its option to *renew* a contract does not constitute intentional interference with an *existing* contract. *See Tokuzo Shida v. Japan Food Corp.*, 251 Cal. App. 2d 864, 866 (1967); *Charles C. Chapman Bldg. Co. v. Cal. Mart*, 2 Cal. App. 3d 846, 855-57 (1969).

Oracle now argues that customers breached their Oracle support contracts and the MOS Terms of Use when a Solaris patch was downloaded, copied, and installed on an unsupported server. BlueBr.56; ER130. This theory fails because pre-installation downloading and copying is authorized by the contracts, and Oracle has no evidence that a Solaris patch was installed on an unsupported server.

The customer support contracts provide that "[c]ustomers with unsupported hardware systems are not entitled to download or receive updates" or "patches" "for unsupported hardware systems." ER130. The MOS Terms of Use provide that a customer may "use[]" Oracle updates and patches "only in support of [the cus-

42

tomer's] authorized use of the Oracle programs and/or hardware for which [the customer] hold[s] a current support contract from Oracle." ER125; ER325. Oracle admits that "each customer" had an Oracle support contract (BlueBr.56), and could "use Solaris patches" on supported servers under these contracts (BlueBr.7). Thus, each "customer—or an agent acting on the customer's behalf"—was authorized "to download" Solaris patches, transfer them to an FTP site, and install them on servers covered by a support contract at the time of download or installation. ER325. Accordingly, all pre-installation downloading and copying was authorized, and only installations on unsupported servers could breach the contracts. But Oracle has no evidence that HPE or Terix installed an unauthorized patch on an unsupported server.

Perhaps this is why Oracle argues—for the first time in its opening brief on appeal—that "HPE *disrupted* Oracle's contractual relationships with its server-support customers" by convincing those "customers [to] mov[e] their whole estates of Oracle servers off of Oracle's support contracts and onto HPE's unlawful support offering." BlueBr.56-57. To the extent Oracle's "disruption" theory is the same "breach" theory Oracle abandoned at summary judgment, it has been waived. *United States v. Kaplan*, 836 F.3d 1199, 1216-17 (9th Cir. 2016). To the extent it differs, Oracle forfeited it by failing to raise it in the district court (*Zixiang Li v. Kerry*, 710 F.3d 995, 1000 (9th Cir. 2013); D.Ct. Dkt. 544-4 at 19), and Oracle "does

43

not even attempt to show exceptional circumstances" that would justify addressing the theory for the first time on appeal (*Nghiem v. NEC Elecs., Inc.*, 25 F.3d 1437, 1442 (9th Cir. 1994)).

Oracle's disruption theory also is wrong. A third party disrupts an existing contractual relationship where it "interfer[es] with the performance of the contract." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998). But where a customer's annual support contract with Oracle expires and the customer declines to renew it, there is no disruption of an existing contract. *Tokuzo Shida*, 251 Cal. App. 2d at 866. Indeed, every Oracle customer has the right, but *not* the obligation, to renew its annual support contracts with Oracle. The customer is equally free to con-tract with an alternative support provider (or engage in self-support), as Oracle does not dispute. *See Smith v. Adventist Health Sys./West*, 182 Cal. App. 4th 729, 753 (2010) (recognizing "general principle regarding freedom of contract"). This is pre-cisely why California courts decline to find intentional interference with contract where the defendant merely convinces a party not to renew an annual contract with the plaintiff. *See Charles C. Chapman Bldg. Co.*, 2 Cal. App. 3d at 855-57.

### 2. Oracle Failed to Present Evidence of Resulting Damage

Oracle also failed to present evidence that any breach of an existing contract caused "resulting damage[s]." *Pac. Gas & Elec.*, 50 Cal. 3d at 1126. "Oracle's customers pay for support contracts up front, so even if any Oracle support contracts

were disrupted or breached as a result of HPE's conduct, that could not cause Oracle economic harm." ER340; SER1279; D.Ct. Dkt. 470-3 at 21. Oracle had no answer to this argument when HPE made it below, and it has no answer now.

Instead, Oracle argues that it lost profits as a result of HPE's competition and the customers' freedom to choose whether to contract with Oracle, a third party, or no one at all. BlueBr.57. Indeed, the only evidence Oracle cites concerning damages are of its purported loss in revenue when customers chose not to renew their support contracts, not damages resulting from any breach. ER1393-94; ER1404. Thus, Oracle failed to present the necessary evidence, and the district court correctly granted summary judgment to HPE.

Oracle also contends that the district court erred by citing *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1151-52 (2004), because "*Reeves* expressly limited its holding to 'at-will *employment* relation[s]' and based its rule on the 'dual policy concerns of employee mobility and the promotion of legitimate competition.'" BlueBr.57 (purporting to quote *Reeves*). That is wrong. First, the "quote" Oracle references does not appear anywhere in *Reeves*. Second, Oracle forfeited this argument by failing to present it in the district court. *See Zixiang Li*, 710 F.3d at 1000; D.Ct. Dkt. 544-3 at 19. And third, this Court has recognized that *Reeves* did not explicitly limit its holding to the "at-will employment context." *Ixchel Pharma, LLC v. Biogen, Inc.*,

930 F.3d 1031, 1038 (9th Cir. 2019) (certifying to the California Supreme Court the question whether *Reeves* applies beyond the at-will employment context).

To be sure, the California Supreme Court recently granted certification to decide whether *Reeves* applies outside the at-will employment context. *Ixchel Pharma, LLC v. Biogen, Inc.*, Case No. S256927 (Cal. Sept. 11, 2019). But the state court's resolution of the question will have no effect on the district court's ruling and analysis here. Although the district court cited *Reeves* for background principles, it did not *rely* on *Reeves* in concluding that Oracle failed to present evidence of harm resulting from a breach. ER340. Instead, the court relied on Oracle's "fail[ure] to respond to HPE's argument that it suffered no economic harm" because "Oracle's customers pay for support contracts up front." ER340. The Court should do the same here.

**B.  The District Court Correctly Granted Summary Judgment on Oracle's Intentional Interference with Prospective Economic Advantage Claims**

Oracle's claims for intentional interference with prospective economic advantage fail because Oracle presented no evidence that HPE committed an independently wrongful act that caused Oracle harm.

Oracle was required to present evidence that HPE engaged in wrongful acts designed to disrupt an economic relationship between Oracle and a third party that

had a probability of future economic benefit to Oracle. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003). An act of interference is not enough (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995)); rather, Oracle had to present evidence that HPE engaged in an "independently wrongful" act that is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard" (*Korea Supply*, 29 Cal. 4th at 1159). Oracle also had to present evidence that any such act "proximately caused" it to suffer harm. *Westside Center Assocs. v. Safeway Stores*, 42 Cal. App. 4th 507, 522 (1996). Oracle failed on both accounts.

### 1. Oracle Failed to Present Evidence of Wrongful Conduct

In the district court, Oracle presented no evidence that HPE engaged in "wrongful acts" that "actual[ly] disrupt[ed]" a prospective economic relationship. *Korea Supply*, 29 Cal. 4th at 1153-54. In fact, Oracle carefully avoided identifying *who* performed the alleged wrongful acts because Oracle has no evidence that HPE—as opposed to Terix—engaged in purportedly interfering conduct.

There is no cognizable theory of *indirect* liability for an intentional interference claim. Oracle was required to present evidence of "wrongful conduct on the part of the defendant"—HPE—and not on the part of a third party like Terix. *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 713 (2007). While

Oracle argues that the record is "rife with illicit conduct" (BlueBr.52), the conduct of which it complains is Terix's, not HPE's. *Korea Supply*, 29 Cal. 4th at 1154.

For example, Oracle contends that its customers were falsely told that "HPE and Terix could validly provide Solaris patches." BlueBr.52. But customers testified that HPE did *not* promise them free patches or updates. SER905-07; SER913; SER1283. And all the evidence Oracle cites (BlueBr.52) concerns general statements *by Terix*; Oracle does not cite an actual statement to an actual customer by HPE that the customer was entitled to patches for servers not covered by a support contract, let alone evidence that any customer declined to renew its Oracle contracts as a result of such a statement by HPE. *See* ER928-32; ER941-42 (concerning "questionable" "claims" made and "deals" offered only by "Terix").

Oracle also maintains that "Solaris patches [were obtained from MOS] under false pretenses." BlueBr.52. But the only evidence it cites is former Terix employee Jason Joyce's testimony about Terix's method of obtaining patches. ER696-99; ER704-05; ER712-14. Oracle cites no evidence of *HPE's* conduct on this point.

Moreover, Oracle insists that HPE "knowingly misrepresent[ed]" that it "scrupulously respected [Oracle's] intellectual property." BlueBr.52. But the first document Oracle cites in support is a pre-litigation letter from *Terix*'s counsel to Oracle that has nothing to do with HPE. ER1481-83. And the second is an email—also to Oracle—in which an HPE employee states that patches cannot be installed "on un-

48

entitled systems"—a statement that the parties *agree* is true and thus cannot form the basis for Oracle's interference claims. ER479-80. Oracle thus has no evidence that HPE engaged in any wrongful acts or made misrepresentations to customers.

Oracle claims that the district court focused "only on discrete acts of misrepresentation, as opposed to HPE's continuous course of fraudulent conduct." BlueBr.53. But Oracle is deliberately conflating HPE and Terix. To survive summary judgment, Oracle was required to present evidence of a purported misrepresentation *by HPE*, and it failed to do so. Oracle cannot water down its burden by pointing to a "course of fraudulent conduct" by Terix; it must present evidence of a timely, wrongful act by HPE. And, as the district court correctly concluded, "Oracle fail[ed] to introduce evidence of a timely independent wrong" by HPE. ER341 (deeming alleged misrepresentations prior to May 6, 2013, including alleged misrepresentations to Comcast, non-actionable); *see also infra* Part III.B. The district court did not "los[e] sight of the broader practice of wrongful conduct"; it simply held Oracle to its burden of proof.

### 2. Oracle Failed to Present Evidence of Causation

Oracle also failed to present evidence that an independent wrong "proximately caused" the alleged harm. *Westside Center Assocs.*, 42 Cal. App. 4th at 522. To establish this "threshold causation requirement," Oracle was required to submit "proof that it is reasonably probable that the lost economic advantage would have

been realized but for the defendant's interference." *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987).

Here, Oracle presented no evidence tying the alleged wrongful conduct to lost customer relationships. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 852 (9th Cir. 2004). On the contrary, Mark Hurd, Oracle's co-CEO and head of its sales organization during the relevant period, testified that he is unaware of a single customer that left Oracle because HPE told the customer that it could provide Solaris patches. SER918-20. Hurd admitted that he has never seen any estimate of how much revenue Oracle has lost as a result of HPE's MVS business. SER918-20. Oracle attempts to downplay Hurd's testimony, but it cannot dispute that he received weekly updates describing the reasons every customer, including those at issue here, left Oracle support. SER345-46. The Court should affirm the district court's grant of summary judgment to HPE.

## C.     Oracle's Unfair Competition Claim Fails as a Matter of Law

Oracle's UCL claim is derivative of its other state-law claims (BlueBr.58 n.3) and therefore fails for the same reason those claims fail. *See Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 962 (9th Cir. 2018).[2]

---

[2] If any of Oracle's state-law claims were revived, HPE would show that they are preempted by the Copyright Act. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008); *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1144 (9th Cir. 2006); *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir. 1987).

### III. Many of Oracle's Claims Are Barred by the Statute of Limitations

The district court correctly concluded that all copyright infringement claims based on alleged infringement that occurred prior to May 6, 2012, and all state-law claims based on alleged conduct that occurred prior to May 6, 2013, are time-barred. ER334-35; *see also* SER1174; SER1177; SER1531. That is because the parties executed a tolling agreement effective May 6, 2015; all claims accruing more than three years (federal) or two years (state) before that date are untimely. The undisputed evidence established that before then, Oracle "believed [that] HP was participating with TERiX in the facilitation of the provision of patches and updates for Solaris to customers who were not entitled to them." SER350.

#### A. Oracle's Copyright Claims Are Partially Time-Barred

The statute of limitations for copyright infringement claims is three years. 17 U.S.C. § 507(b). A direct infringement claim accrues "when the copyright holder has 'knowledge of a violation or is chargeable with such knowledge'" (*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004)), and an indirect infringement claim accrues when the copyright holder has knowledge (actual or constructive) of the underlying direct infringement (*Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 890 (6th Cir. 2004); *Mount v. Book-of-the-Month Club, Inc.*, 555 F.2d 1108, 1110 (2d Cir. 1977); *cf. Dyniewicz v. United States*, 742 F.2d 484, 486-87 (9th Cir. 1984)). Under these unchallenged standards, the district court

correctly held that Oracle's copyright infringement claims based on alleged conduct before May 6, 2012 are time-barred.  ER334.

### 1. The Undisputed Evidence Establishes Oracle's Knowledge

On appeal, Oracle argues that the district court erred in finding "that, as a matter of law, Oracle had 'actual or constructive knowledge' of *all* of Terix's and HPE's wrongdoing as far back as 2010."  BlueBr.43 (emphasis added).  But the district court made no such finding, nor was it required to.  What the district court actually found was that Oracle had actual or constructive knowledge of the conduct now accused as unlawful—i.e., downloading and installing Solaris patches on un-supported servers—by Terix and HPE well before May 6, 2012.

At most, Oracle was "merely ignoran[t] of evidence, not ignoran[t] of a po-tential claim" (*Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 341 (5th Cir. 1971)), which are two very different things.  The limitations period does not toll "while [Or-acle] ferrets the facts."  *Id.*; *see also Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983); *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992) ("We cannot adopt the proposition that to trigger the statute of limi-tations not only must plaintiff know of the facts furnishing her with a cause of action, but also that those facts are sufficient to entitle her to relief").  It makes no matter that Oracle didn't know about *all* of the alleged misconduct; if Oracle knew about *any* of it, Oracle's claims are time-barred.

As the district court correctly held, there is "significant evidence" "showing that Oracle had actual knowledge of Terix's conduct since at least 2009, and Oracle knew of, or at least strongly suspected, HPE's alleged wrongdoing starting in 2010." ER332-34. Each of the following examples cited by the district court dates from before May 6, 2012:

- Prior to Oracle's acquisition of Sun in 2010, Sun accused Terix of infringement for the very practices about which Oracle now complains, and individuals within Sun advocated "go[ing] after Terix" for it. SER679; SER683; SER690; SER1159; SER162. Sun also specifically identified "HP" as an "unauthorized service provider[]." SER690.

- Oracle's pre-Sun-purchase (2009) and post-Sun-purchase "attack plan" (2010) explicitly identified "going after" "TERiX" for "illegal access to SUN IP" (SER766), and at the same time singled out "HP['s]" work with its "Third Party Maintainer: Terix" (SER737).

- In 2010, Oracle hatched plans to "eliminate IP leakage" associated "with TPMs," including "HP." SER775; *see also* SER785; SER818; SER823; SER837.

- Oracle specifically acknowledged, in 2010, that if a customer was "to go to HP for support, *we'll be forced to approach them over IP issues* and that will kill the relationship." SER837.

- Throughout 2011, numerous large customers told Oracle about Terix's activities (ER333), prompting internal Oracle emails chains such as this one: "URGENT- TERIX told GE they can provide [operating system] patches for Sun Systems" (SER845).

- Oracle's witness testified that "by at least October 1st, 2011, [she] had heard from others at Oracle that they believed [that] HP was participating with TERiX in the facilitation of the provision of patches and updates for Solaris to customers who were not entitled to them." SER348.

Based on this evidence, no reasonable jury could conclude anything other than that Oracle actually knew or at least had constructive knowledge of its claims here. *Cf. Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50 (2d Cir. 2019) (affirming judgment as a matter of law on statute of limitations grounds because plaintiff was "put on notice of" of trade-secret misappropriation when "executive" of company "understood," as evidenced by "testi[mony]" and "email[s]," that defendant "gave [the plaintiff's] software and source code to" another entity).

On appeal, Oracle ignores much of the evidence on which the district court relied. While the district court discussed two exemplars of Oracle's knowledge, the court also held that there was "significant evidence" of Oracle's knowledge concerning Terix (and HPE) in addition to those two examples. Yet, on appeal, Oracle takes issue only with the court's two examples, ignoring all the other evidence. Oracle thus waives any challenge to evidence it fails to discuss.

Moreover, Oracle's criticisms of the two examples discussed by the district court fall flat.

The first email, to Oracle from its Sun field partner in 2010, says that the field partner believed that "Terix might purchase support for one system and reuse that IP for all other systems." ER1652. Oracle acknowledged that it also believed that "integrators" such as "HP" "use the TPM's to cover … Sun," and furthermore, that

Oracle "[would] be researching the claim about Terix and forwarding it to Legal if [it] believe[d] it is true." ER1652-53.

Oracle contends that this evidence is indicative of, at most, mere "suspicion" about Terix, but could not have put Oracle on notice about HPE. But Oracle does not challenge the district court's legal conclusion that the statute of limitations on an indirect infringement claim runs from the underlying *direct* infringement. ER332. Nor could it. *Bridgeport Music*, 371 F.3d at 890; *cf*. BlueBr.44. Thus, Oracle's argument that it might have been aware of Terix's behavior but not HPE's (BlueBr.45) is entirely beside the point. And the evidence belies the idea that Terix's actions were nothing more than "concern[ing]" to Oracle (BlueBr.44); in Oracle's own words "this is a big deal. We need to push on this." SER867-69. This establishes knowledge about Terix.

The second email Oracle singles out is one in which an Oracle executive says (in 2011), "I have now *confirmed* that [a customer] is receiving Oracle Solaris patches and Oracle Sun firmware patches, from TERiX Computer Service." SER868 (emphasis added). This clearly put Oracle on notice about Terix. And given that evidence, plus the facts that Oracle already had identified HPE's relationship with Terix in 2010 (ER1652; SER846-47; SER871-74) and considered confronting its own customers about HPE and Terix during that same timeframe

(SER849-51; SER868; SER871-74), Oracle cannot feign ignorance about its knowledge of the conduct underlying its claims long before May 6, 2012.

For all these reasons, the "fraudulent concealment" doctrine for tolling the statute of limitations (BlueBr.46-50) is inapplicable here because Oracle had knowledge of its claims (ER334).

Tolling through fraudulent concealment requires: (1) that "the defendant used fraudulent means to keep the plaintiff unaware of his cause of action," *and* (2) that "the plaintiff was, *in fact, ignorant of the existence of his cause of action*." *Wood*, 705 F.2d at 1521 (emphasis added); *see also Stone*, 970 F.2d at 1048-49. As in *Wood*, the evidence here "has affirmatively disproven the second" element (705 F.2d at 1521), for there is no question that Oracle had actual knowledge of the existence of its cause of action. Therefore, "the doctrine of fraudulent concealment does not apply." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).

### 2.     Oracle Did Not Conduct a Reasonable Investigation

Oracle argues that it discharged any duty to investigate by searching its MOS system to see if a "terix.com" email address was used to download its software. *See* ER334. It found none, and it attributes this to Terix using surreptitious methods to download for customers that Oracle did not discover until after it sued Terix. ER334; *see also* BlueBr.47. Oracle's investigation, however, was unreasonable.

*First*, searching only for "terix.com" was inadequate. Oracle's own investigation declaration states that access to MOS is gained through "the customer's email address and user-selected password," not the email addresses of a TPM. ER1370; *see* ER326; ER334. Moreover, Oracle had already been told by one of its field correspondents that Terix was suspected of "*reus*[*ing*] that IP" from one system "for all other systems." ER1652 (emphases added). Armed with that information, it was unreasonable for Oracle to limit its investigation to MOS.

*Second*, it is undisputed that Oracle "did not investigate other ways Terix could have provided patches to unentitled servers," and in particular failed to exercise its contractual right to audit its customers' systems, despite knowing that some were working with Terix. ER334; SER524-27; SER858; SER867. Contrary to Oracle's argument, the district court did not require Oracle to audit its customers; the court simply observed that Oracle failed to take at least one clear investigative step within its power that it expressly contemplated taking, yet inexplicably chose not to take.

Oracle protests that "[n]othing in the record indicates what a customer audit would have accomplished," and further complains that it had no reason to "suspect that any of its own customers were actually complicit in Terix's" activities. BlueBr.48. But Oracle need not believe that its customers are complicit in anything—because customers themselves were telling Oracle about Terix's behavior

that Oracle complains of in this lawsuit. *E.g.*, SER878. Oracle chose not to inves-

tigate despite expressly believing that HPE and Terix were violating its intellectual

property rights. SER839-42; *see also* SER849-51. That is unreasonable as a matter

of law.

Far from being "unprecedented" (BlueBr.48), the investigative burden the dis-

trict court placed on Oracle was no more significant than the burden numerous

courts, including this one, have imposed on rights holders to protect their intellectual

property rights. *E.g.*, *Wood*, 705 F.2d at 1521 (plaintiff's "suspicion that at least one

of his photographs had been infringed" at one point, "placed upon [him] a duty to

investigate further into possible infringements of his copyrights"); *Stone*, 970 F.2d

at 1048-49 (plaintiff was on notice that "she might be the daughter of" a recording

artist, entitling her to royalties, when she "acknowledged" that "her adoptive

mother" had told her it was a "possibility" yet plaintiff then "fail[ed] to pursue the

matter aggressively").

*Third*, Oracle also argues that Terix and HPE denied wrongdoing, and that

Oracle therefore was discharged of any further duty of inquiry or that its inquiry was

thus hampered. BlueBr.47. Oracle cites no Ninth Circuit authority for this point,

because this Court has already rejected it, holding that "[a] failure to 'own up'" when

confronted with an allegation of "illegal conduct" "does not constitute *active* con-

cealment." *Grimmett v. Brown*, 75 F.3d 506, 515 (9th Cir. 1996); *see also Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987).

Moreover, the only piece of evidence involving HPE that Oracle cites in this regard is Oracle asking an HPE employee if a separate HPE team "intends to install Solaris patches on un-entitled systems," and the HPE employee stating he did "not believe" so and would look into it. ER479-80. Oracle presents no evidence of HPE actively concealing its activities, fraudulently or otherwise. "To permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid inquiry would effectively nullify the statute of limitations." *Pocahontas*, 828 F.2d at 218-19.

## B. Oracle's State-Law Claims Are Partially Time-Barred

Oracle's state-law claims based on alleged events that occurred prior to May 6, 2013 are similarly barred under California's two-year statute of limitations. *See* Cal. Code Civ. Proc. § 339(1); *see also* ER335. The district court correctly held that Oracle had knowledge of these claims long before May 6, 2013 (as early as 2011). ER335. Oracle's arguments to the contrary suffer from the same flaws as its copyright statute of limitations arguments.

*First*, Oracle again contends that the district court ruled "on the basis of two documents." BlueBr.54. That is demonstrably false. The district court cited no

fewer than five separate exhibits (SER767-774; SER849-51; SER853-57; SER876; SER894-97) in holding that Oracle's claims were time-barred (ER335, ER341), and HPE presented even more evidence than that (SER738-65; SER899-901). The district court discussed two emails "as an *example*" of the evidence before it. ER334-35 (emphasis added). Oracle ignores this and thus waives any challenge to the remaining evidence.

*Second*, Oracle mischaracterizes the two documents it does discuss. Oracle's internal corporate presentation identified "HP" as one of "[t]he most active unauthorized Third Party Maintainers," and also stated that one of its "most common methods … to attract customers" is "[c]laiming to legitimately source and install [Oracle's] non-security related software patches." SER738-65. No reasonable jury could conclude this was merely a "general concern" and *not* about "HPE or Terix," which is what Oracle contends on appeal. BlueBr.54. Oracle similarly mischaracterizes its own internal email in 2011 in which a major customer, Comcast, was acknowledged to be "seriously considering cancelling" its contract with Oracle and "going with HP/Terix." ER1656.

These facts, along with the substantial additional evidence presented to the district court, establish without any doubt that Oracle was aware of its interference claims before May 6, 2013, and all such claims, therefore, are time-barred. *See* SER849-51(internal 2011 Oracle emails regarding Comcast threat to leave Oracle

for HPE/Terix); SER859-66 (similar); SER894-97(similar); SER899-901 (2012 Oracle/Comcast email showing Comcast leaving Oracle support).

*Third*, Oracle's knowledge renders its argument of "fraudulent concealment" on the state-law claims (BlueBr.54-55) irrelevant, because fraudulent concealment tolls "for that period during which the *claim* is *undiscovered* by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (emphases added).

All state-law claims based on alleged conduct that occurred before May 6, 2013 are time-barred. ER335; ER341. (Oracle's UCL claims are also barred by the four-year statute of limitations, Cal. Bus. & Prof. Code § 17208, because Oracle was aware of its claims by at least 2011.)

# CONCLUSION

The Court should affirm the judgment.

Respectfully submitted,

Dated:  September 27, 2019

s/ *Mark A. Perry*

VAISHALI UDUPA
HEWLETT PACKARD ENTERPRISE COMPANY
12010 Sunset Hills Road, 3rd Floor
Reston, VA  20190

DEANNA L. KWONG
HEWLETT PACKARD ENTERPRISE COMPANY
6280 America Center Drive
San Jose, CA  95002

JEFFREY T. THOMAS
BLAINE H. EVANSON
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612

MARK A. PERRY
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, DC  20036
TEL:  (202) 955-8500
mperry@gibsondunn.com

SAMUEL G. LIVERSIDGE
JOSEPH A. GORMAN
ILISSA S. SAMPLIN
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071

# STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, appellee HPE states that there are no related cases pending before this Court.

Dated:  September 27, 2019          s/ *Mark A. Perry*
                                                Mark A. Perry

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Circuit Rule 32-1(a) because it contains 13,876 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced 14-point Times New Roman typeface using Microsoft Word 2016.


Dated:  September 27, 2019            s/ *Mark A. Perry*
                                              Mark A. Perry